IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
CEDAR RAPIDS DIVISION

GARY A. KNEBEL,

   Plaintiff,

vs.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

   Defendant.

No. C16-0017

RULING ON JUDICIAL REVIEW

TABLE OF CONTENTS

I.  *INTRODUCTION* ........................................ 2

II.  *PRINCIPLES OF REVIEW* ............................. 2

III. *FACTS* ............................................... 3

IV. *CONCLUSIONS OF LAW* .............................. 5
  A. *ALJ's Disability Determination* ................... 5
  B. *Objections Raised By Claimant* ................... 8
    1. *Treating Source Opinions* ................. 8
    2. *Credibility Determination* ................ 13
    3. *RFC Assessment* ......................... 19

V.  *CONCLUSION* ....................................... 21

VI. *ORDER* ............................................. 21

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 1) filed by Plaintiff Gary A. Knebel on January 25, 2016, requesting judicial review of the Social Security Commissioner's decision to deny his applications for Title II disability insurance benefits and Title XVI supplemental security income ("SSI") benefits.[1] Knebel asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide him disability insurance benefits and SSI benefits. In the alternative, Knebel requests the Court to remand this matter for further proceedings.

## II. PRINCIPLES OF REVIEW

The Commissioner's final determination not to award disability insurance benefits following an administrative hearing is subject to judicial review. 42 U.S.C. § 405(g). The Court has the authority to "enter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." *Id.* The Commissioner's final determination not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3).

The Court "'must affirm the Commissioner's decision if it is supported by substantial evidence on the record as a whole.'" *Bernard v. Colvin*, 774 F.3d 482, 486 (8th Cir. 2014) (quotation omitted). Substantial evidence is defined as less than a preponderance of the evidence, but is relevant evidence a "'reasonable mind would find adequate to support the commissioner's conclusion.'" *Grable v. Colvin*, 770 F.3d 1196, 1201 (8th Cir. 2014). In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence." *Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). "The findings of the Commissioner . . . as to any fact, if supported by substantial

---

[1] On April 12, 2016, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

evidence, shall be conclusive . . ." 42 U.S.C. § 405(g). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012)

In *Culbertson v. Shalala*, the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

30 F.3d 934, 939 (8th Cir. 1994). In *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). *See also Cline v. Colvin*, 771 F.3d 1098, 1102 (8th Cir. 2014) ("'As long as substantial evidence in the record supports the Commissioner's decision, [the court] may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because [the court] would have decided the case differently.' *Krogmeier v. Barnhart*, 294 F.3d 1019, 1022 (8th Cir. 2002).").

### III. FACTS

Knebel was born in 1975. He did not graduate from high school, but later earned a GED. In the past, he worked as a handyman, janitor/laborer, and construction worker.

Knebel filed his applications for disability insurance benefits and SSI benefits on November 18, 2008, alleging disability due to a herniated neck disc and broken right foot.[2] He alleged he became disabled on August 8, 2007. His applications were denied upon initial review, and on reconsideration. On July 26, 2010, Knebel appeared via video conference with his attorney before Administrative Law Judge ("ALJ") Thomas M. Donahue for an administrative hearing. In a decision dated August 26, 2010, the ALJ denied Knebel's claims. The ALJ determined Knebel was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Knebel appealed the ALJ's decision. On December 6, 2011, the Appeals Council denied Knebel's request for review. Consequently, the ALJ's August 26, 2010 decision was adopted as the Commissioner's final decision.

Knebel appealed the Commissioner's final decision to federal district court. Knebel filed his Complaint on February 1, 2012. *See* docket number 3 in case number 1:12-cv-00015-JSS. On July 18, 2012, the district court entered an Order granting the Commissioner's unresisted Motion for Remand. *See* docket number 12 in case number 1:12-cv-00015-JSS. The remand order was issued under sentence six of 42 U.S.C. § 405(g), for purposes of determining whether the administrative record was complete. The case was administratively closed. On May 8, 2014, the district court entered an Order reopening the case and directed the Clerk of Court to enter a new briefing schedule for both parties. *See* docket number 17 in case number 1:12-cv-00015-JSS. After briefing was complete, the district court entered a Ruling on December 29, 2014. *See* docket number 27 in case number 1:12-cv-00015-JSS. The district court remanded the case to the Commissioner for further proceedings, including development of the ALJ's credibility finding and development of the medical opinion evidence in the record.

---

[2] The protective filing date was October 25, 2008.

On July 14, 2015, ALJ Jo Ann L. Draper held a second administrative hearing. Knebel appeared at the hearing via video conference with his attorney. In a decision dated September 25, 2015, the ALJ denied Knebel's claims. The ALJ determined Knebel was not disabled and not entitled to disability insurance benefits or SSI benefits because he was functionally capable of performing work that exists in significant numbers in the national economy. Knebel did not file exceptions to the second ALJ decision, and the Appeals Council did not elect to review the decision on its own. Therefore, after 60 days the ALJ's decision became final, and Knebel had 60 days to file an appeal in federal district court.

On January 25, 2016, Knebel timely filed the instant action for judicial review. A briefing schedule was entered on April 11, 2016. On July 11, 2016, Knebel filed a brief arguing there is no substantial evidence in the record to support the ALJ's finding that he is not disabled and that he is functionally capable of performing other work that exists in significant numbers in the national economy. On August 5, 2016, the Commissioner filed a responsive brief arguing the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. Additionally, on June 27, 2016, the parties filed a joint statement of facts addressing Knebel's background, the case's procedural history, testimony from the second administrative hearing, and Knebel's medical history. *See* docket number 10. The parties' joint statement of facts is hereby incorporated by reference. Further discussion of pertinent facts will be addressed, as necessary, in the Court's consideration of the legal issues presented.

## IV. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined Knebel was not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g); *Bowen v. Yuckert*,

482 U.S. 137, 140-42 (1987); *Moore v. Colvin*, 769 F.3d 987, 988 (8th Cir. 2014). The five steps an ALJ must consider are:

> (1) whether the claimant is currently employed; (2) whether the claimant is severely impaired; (3) whether the impairment is or approximates an impairment listed in Appendix 1; (4) whether the claimant can perform past relevant work; and, if not, (5) whether the claimant can perform any other kind of work.

*Hill v. Colvin*, 753 F.3d 798, 800 (8th Cir. 2014); *see also* 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006).

In considering the steps in the five-step process, the ALJ:

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "'bears the burden of demonstrating an inability to return to [his] or her past relevant work.'" *Jones v. Astrue*, 619 F.3d 963, 971 (8th Cir. 2010). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "'the claimant has the physical residual functional capacity to perform a significant number of

other jobs in the national economy that are consistent with [his or] her impairments and vocational factors such as age, education, and work experience.'" *Phillips v. Astrue*, 671 F.3d 699, 702 (8th Cir. 2012). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. §§ 404.1545(a), 416.945(a)(1); *Toland v. Colvin*, 761 F.3d 931, 935 (8th Cir. 2014). The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence, including the medical records, observations of treating physicians and others, and an individual's own description of [his or] her limitations.'" *Myers v. Colvin*, 721 F.3d 521, 527 (8th Cir. 2013); 20 C.F.R. §§ 404.1545, 416.945.

The ALJ applied the first step of the analysis and determined Knebel had not engaged in substantial gainful activity since August 8, 2007. At the second step, the ALJ concluded from the medical evidence Knebel had the following severe impairments: degenerative disc disease of the cervical spine at C6-7; status-post right foot fracture, marijuana abuse, depressive disorder, and anti-social traits. At the third step, the ALJ found Knebel did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Knebel's RFC as follows:

> [Knebel] has the residual functional capacity to perform sedentary work . . . such that [he] would be limited to lifting or carrying no more than ten pounds occasionally, five pounds frequently. [Knebel] is limited to standing or walking two hours a day, and sitting six to eight hours a day. [He] would need to be able to change postural positions approximately every thirty minutes, and that would entail rising from a seated position to stand or walk for two or three minutes before returning back to a seated position, all without leaving the work area or being off task. [Knebel] could only occasionally climb, balance, kneel, stoop, crouch or crawl, and could only occasionally reach overhead bilaterally. [Knebel] could never climb ropes, ladders, or scaffolds. [He] should have no more

7

than occasional interaction with the public, coworkers, or supervisors.

(Administrative Record at 1058-59.) Also at the fourth step, the ALJ determined Knebel is unable to perform his past relevant work. At the fifth step, the ALJ determined based on his age, education, previous work experience, and RFC, Knebel could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded Knebel was not disabled.

### B. Objections Raised By Claimant

Knebel argues the ALJ erred in three respects. First, Knebel argues the ALJ failed to properly evaluate the opinions of his treating sources, Drs. Smucker, Femino, and Yang. Second, Knebel argues that the ALJ failed to properly evaluate his subjective allegations of pain and disability. Lastly, Knebel argues the ALJ's RFC assessment is flawed because it is not supported by substantial evidence and does not properly set forth his credible functional limitations.

### 1. Treating Source Opinions

Knebel argues that the ALJ failed to properly evaluate the opinions of his treating sources, Dr. Smucker, Dr. Femino, and Dr. Yang. Specifically, Knebel argues the ALJ's reasons for discounting Dr. Smucker's, Dr. Femino's, and Dr. Yang's opinions are not supported by substantial evidence in the record. Knebel concludes that this matter should be remanded for further consideration of the opinions of Drs. Smucker, Femino, and Yang.

The ALJ is required to "assess the record as a whole to determine whether treating physicians' opinions are inconsistent with substantial evidence of the record." *Travis v. Astrue*, 477 F.3d 1037, 1041 (8th Cir. 2007) (citing 20 C.F.R. § 404.1527(d)(2)). "Although a treating physician's opinion is entitled to great weight, it does not automatically control or obviate the need to evaluate the record as a whole." *Hogan v. Apfel*, 239 F.3d 958, 961 (8th Cir. 2001) (citing *Prosch v Apfel*, 201 F.3d 1010, 1013 (8th

8

Cir. 2000)). "The ALJ may discount or disregard such an opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions." *Id.*; *see also Travis*, 477 F.3d at 1041 ("A physician's statement that is 'not supported by diagnoses based on objective evidence' will not support a finding of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003). If the doctor's opinion is inconsistent with or contrary to the medical evidence as a whole, the ALJ can accord it less weight.'*Id..*); *Strongson v. Barnhart*, 361 F.3d 1066, 1070 (8th Cir. 2004) (an ALJ does not need to give controlling weight to a physician's RFC if it is inconsistent with other substantial evidence in the record); *Cabrnoch v. Bowen*, 881 F.2d 561, 564 (8th Cir. 1989) (the resolution of conflicts of opinion among various treating and examining physicians is the proper function of an ALJ). The ALJ may discount or disregard a treating physician's opinion if other medical assessments are supported by superior medical evidence, or if the treating physician has offered inconsistent opinions. *Hamilton v. Astrue*, 518 F.3d 607, 609 (8th Cir. 2008).

Also, the regulations require an ALJ to give "good reasons" for assigning weight to statements provided by a treating physician. *See* 20 C.F.R. § 404.1527(d)(2). An ALJ is required to evaluate every medical opinion he or she receives from a claimant. 20 C.F.R. § 404.1527(d). If the medical opinion from a treating source is not given controlling weight, then the ALJ considers the following factors for determining the weight to be given to all medical opinions: "(1) examining relationship, (2) treating relationship, (3) supportability, (4) consistency, (5) specialization, and (6) other factors." *Wiese*, 552 F.3d at 731 (citing 20 C.F.R. §§ 404.1527(c)). "'It is the ALJ's function to resolve conflicts among the opinions of various treating and examining physicians. The ALJ may reject the conclusions of any medical expert, whether hired by the claimant or the government, if they are inconsistent with the record as a whole.'" *Wagner*, 499 F.3d at 848 (quoting *Pearsall v. Massanari*, 274 F.3d 1211, 1219 (8th Cir. 2001)). The decision

9

must contain specific reasons for the weight given to the treating source's medical opinion, supported by evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. SSR *96-2P*, 1996 WL 374188 (1996).

In her decision, the ALJ exhaustively reviewed Knebel's entire medical history.[3] The ALJ also thoroughly addressed Knebel's treatment history with Drs. Smucker, Femino, and Yang.[4] Furthermore, the ALJ specifically considered and addressed Dr. Smucker's opinions as follows:

> The opinions of Dr. Smucker are considered as those from a treating medical provider. Of note, the opinions appeared inconsistent with the objective clinical findings noted by Dr. Smucker during his evaluations of [Knebel]. Post-surgery, Dr. Smucker found [Knebel] to be doing well and his pain had improved dramatically. [Knebel] reported he could lift light objects, sit in a chair for as long as he likes, stand for as long as he likes but with some pain, and he denied paresthesia. He reported having some difficulties lifting and carrying groceries, climbing stairs, but indicated that walking more than a mile was not limited. [He] had 5/5 strength throughout the upper extremities (Exhibit 13F, pg. 57). In June 2008, Dr. Smucker noted intact and full range of motion, 5/5 strength, and intact sensation, which appeared inconsistent with his opinions regarding limited duty hours and minimal bending/twisting (Exhibit 17F, pg. 263). In August 2008, Dr. Smucker reported [Knebel's] neck moved well but with some associated pain. While complaining of occasional numbness, the doctor was unable to reproduce this on evaluation. [Knebel's] upper extremity strength was 5/5 and his surgical incision looked well on evaluation (Exhibit 13F, pgs. 62-68). Similarly, the doctor subsequently noted intact orthopedic findings during evaluations in March and April

---

[3] *See* Administrative Record at 1060-70.

[4] *See id.* at 1060-63, 1067 (Dr. Smucker); 1063, 1065 (Dr. Femino); 1064-66 (Dr. Yang).

2009, finding [Knebel] was doing well regarding his fusion (Exhibit 21F; 25F, pg. 4). Going forward, Dr. Yang noted full range of motion of the cervical spine, foil motion at the elbow and wrist, and negative Spurting maneuver (Exhibit 29F, pgs. 4-10). Most recently, Dr. Smucker reported full cervical motion and normal strength on reevaluation in June 2013 (Exhibit 36F, pg. 109). The undersigned has afforded the opinions some weight, considering [Knebel's] healing period following fusion. However, the opinions appeared inconsistent with the unremarkable examination findings going forward, supporting a finding of only partial weight as discussed above.

(Administrative Record at 1070-71.) The ALJ also addressed Dr. Femino's opinions:

The findings and opinions of Dr. Femino are considered as those from a treating medical provider. Significantly, it appeared the opinions from Dr. Femino were short-term in nature and for postsurgical healing purposes. Notably, the opinions appeared inconsistent with the objective medical findings following the claimant's foot procedure. More specifically, Dr. Femino noted [Knebel] was doing well status-post right foot surgery, such that he was not requiring any pain medications (Exhibit 17F, pg. 285). Treatment records from January 2009 indicated [Knebel] was doing well following hardware removal from his right foot open reduction internal fixation (Exhibit 16F, pgs. 5-15). Subsequently, treatment notes indicated [Knebel] failed to follow up with Dr. Femino until April 2010, where the physician noted intact strength and range of motion. [Knebel] was hypersensitive over an incision site; however, this resolved following an injection (Exhibit 29F). Significantly, neurological and neurosurgical evaluations performed in 2011 and 2012 showed normal findings on evaluation, inconsistent with the opinions proffered (Exhibits 36F; 42F). Therefore, based on the apparent short-term basis of the opinions and the inconsistencies with the objective clinical findings, the undersigned has afforded the opinions of Dr. Femino little weight.

(Administrative Record at 1071.) Finally, the ALJ thoroughly considered and addressed the opinions of Dr. Yang:

> The opinions and findings of Dr. Yang are considered as those from a treating medical provider. The undersigned has afforded the opinions limited weight, as it appeared the doctor relied heavily on [Knebel's] subjective allegations, at least in forming his most recent opinions. Notably, the opinion that [Knebel] could not work until after undergoing vocational rehabilitation appeared inconsistent with his prior functional opinions regarding [his] abilities to perform work activity. Furthermore, a review of the vocational rehabilitation notes failed to support the contentions the doctor reported regarding the ability of vocational rehabilitation to find something for [him]. It appeared any problems with vocational rehabilitation were due to difficulties contacting [Knebel] and [his allegations of] further physical issues, which were unsupported. Notably, vocational rehabilitation was working off the 25-pound restrictions noted by Dr. Yang. These records revealed [Knebel] wanted to pursue college courses to become an x-ray technician and indicated they had found positions [he] would be capable of performing within his restrictions, inconsistent with [his] reports to his doctor (Exhibit 24E).
>
> Inconsistent with his opinion of a five pound lifting restriction, examination findings noted by the doctor revealed full cervical range of motion, full motion of the elbow and wrist, and normal strength (Exhibits 25F, pgs. 11-16; 28F, pg. 11; 29F, pgs. 1-5). Notably, EMG testing was unremarkable, failing to support [Knebel's] allegations of numbness and tingling in the upper extremities. Notably, Dr. Yang failed to discuss his opinions in regards to his earlier reports that the objective findings failed to explain [Knebel's] allegations of sudden pain and weakness in his hand (Exhibits 25F, pg. 9; 28F, pg. 8; 30F). Notably, Dr. Yang submitted his statement of September 2010 after [Knebel] presented in an irate manner. Of note, [Knebel] was insistent he be prescribed medical marijuana, even going to the extent of insinuating he had a voice recording of the doctor allegedly indicating he had used

12

the substance (Exhibit 32F, pgs. 68-70). Furthermore, pain clinic notes, neurology notes, and neurosurgical notes going forward noted intact findings on examination, inconsistent with these opinions (Exhibits 36F, pgs. 53, 87; 42F). Based on the internal inconsistencies between the various reports, along with unremarkable EMG and clinical findings, the undersigned has afforded the opinions of Dr. Yang little weight.

(Administrative Record at 1072-73.)

Having reviewed the entire record, the Court finds the ALJ properly considered and weighed the opinion evidence provided by Dr. Smucker, Dr. Femino, and Dr. Yang. The Court also finds that the ALJ provided "good reasons" for discounting Dr. Smucker's, Dr. Femino's, and Dr. Yang's opinions. *See* 20 C.F.R. § 404.1527(c)(2); *Strongson*, 361 F.3d at 1070; *Edwards*, 314 F.3d at 967. Accordingly, even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 2. Credibility Determination

Knebel argues the ALJ failed to properly evaluate his subjective allegations of pain and disability. Knebel maintains the ALJ's credibility determination is not supported by substantial evidence. The Commissioner argues the ALJ properly considered Knebel's testimony, and properly evaluated the credibility of his subjective complaints.

When assessing a claimant's credibility, "[t]he [ALJ] must give full consideration to all the evidence presented relating to subjective complaints, including the claimant's prior work record, and observations by third parties and treating and examining physicians relating to such matters as: (1) the claimant's daily activities; (2) the duration, frequency, and intensity of the pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness and side effects of medication; [and] (5) functional restrictions." *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ should also consider a "a

claimant's work history and the absence of objective medical evidence to support the claimant's complaints[.]" *Finch v. Astrue*, 547 F.3d 933, 935 (8th Cir. 2008). The ALJ, however, may not disregard a claimant's subjective complaints "'solely because the objective medical evidence does not fully support them.'" *Renstrom v. Astrue*, 680 F.3d 1057, 1066 (8th Cir. 2012).

Instead, an ALJ may discount a claimant's subjective complaints "if there are inconsistencies in the record as a whole." *Wildman v. Astrue*, 596 F.3d 959, 968 ((8th Cir. 2010); *see also Lowe v. Apfel*, 226 F.3d 969, 972 (8th Cir. 2000) ("The ALJ may not discount a claimant's complaints solely because they are not fully supported by the objective medical evidence, but the complaints may be discounted based on inconsistencies in the record as a whole."). If an ALJ discounts a claimant's subjective complaints, he or she is required to "'make an express credibility determination, detailing the reasons for discounting the testimony, setting forth the inconsistencies, and discussing the Polaski factors.'" *Renstrom*, 680 F.3d at 1066; *see also Ford v. Astrue*, 518 F.3d 979, 982 (8th Cir. 2008) (An ALJ is "required to 'detail the reasons for discrediting the testimony and set forth the inconsistencies found.' *Lewis v. Barnhart*, 353 F.3d 642, 647 (8th Cir. 2003)."). Where an ALJ seriously considers, but for good reason explicitly discredits a claimant's subjective complaints, the Court will not disturb the ALJ's credibility determination. *Johnson v. Apfel*, 240 F.3d 1145, 1148 (8th Cir. 2001); *see also Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007) (providing that deference is given to an ALJ when the ALJ explicitly discredits a claimant's testimony and gives good reason for doing so); *Gregg v. Barnhart*, 354 F.3d 710, 714 (8th Cir. 2003) ("If an ALJ explicitly discredits the claimant's testimony and gives good reasons for doing so, we will normally defer to the ALJ's credibility determination."). "'The credibility of a claimant's subjective testimony is primarily for the ALJ to decide, not the courts.'" *Vossen v. Astrue*, 612 F.3d 1011, 1017 (8th Cir. 2010).

In her decision, the ALJ addressed Knebel's subjective allegations of pain and disability as follows:

> After careful consideration of the evidence, the undersigned finds that [Knebel's] medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, [his] statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> [Knebel] experiences some symptoms and limitations; however, the record does not fully support the severity of [his] allegations. As discussed in full detail above, the objective medical findings of record failed to support [his] allegations of disabling symptoms and limitations in connection with this application. A review of the longitudinal objective medical findings of record failed to support [his] rather extreme allegations in this matter. Eroding the credibility of [Knebel's] pain complaints, where records noted reports of pain generally from 7-9 on a scale from 1 to 10, were objective findings continually showing [Knebel] as well appearing and in no acute distress. More specifically, while recognizing MRI testing showed degenerative changes of the cervical spine, postsurgical treatment notes revealed [Knebel] was well appearing and in no distress, with full range of motion and 5/5 strength (Exhibits 4F, pgs. 2-3, 6-7, 15, 21, 47; 13F, pgs. 26-35). Post cervical fusion, Dr. Smucker reported [Knebel] was doing well and his pain had dramatically improved. Notably, [Knebel] reported he could lift light objects, sit in a chair for as long as he liked, and stand for as long as he liked, with some pain. He reported he could walk more than a mile without limitations. Later, [he] reported his arm pain had resolved following surgery with Dr. Smucker noting full range of motion, 5/5 strength, and intact sensation (Exhibits 13F; 17F, pgs. 201, 236, 253, 263).
>
> Similarly, Dr. Femino reported [Knebel] was doing well following right foot surgery in August 2008, with [Knebel]

reporting his pain was manageable without medications. Going forward, Dr. Femino noted normal findings and reported [Knebel] was doing well without systemic complaints (Exhibits 13F, pg. 69; 16F, pgs. 5-15; 29F, pgs. 1-3). Dr. Smucker noted intact orthopedic findings during evaluations in March and April 2009, including normal upper extremity strength, inconsistent with [Knebel's] allegations of weakness and numbness (Exhibits 21F; 25F). Dr. Yang generally reported similar, unremarkable clinical findings, which appeared inconsistent with [Knebel's] pain and upper extremity numbness complaints. These findings included [Knebel] in no distress, appearing normal, with full shoulder and cervical spine motion, no focal weakness, full strength, and negative testing for radicular symptoms (Exhibits 25F; 29F; 32F).

Most recently, records revealed [Knebel] sought rather infrequent treatment, inconsistent with his pain allegations. Notably, all treatment records going forward indicated intact strength and orthopedic findings showed full cervical spine motion, despite his fusion (Exhibits 36F; 40F; 42F). The undersigned would further note [Knebel] underwent specialty evaluations through the pain clinic, neurology, and neurosurgery, all noting unremarkable findings (Exhibits 28F; 36F; 42F).

Notably, inconsistent with [Knebel's] allegations of disabling numbness and tingling in his left upper extremity, objective EMG findings have shown negative findings (*See* Exhibits 25F, pg. 9; 28F, pg. 8; 30F). Similarly, while [Knebel] alleged to Dr. Yang having difficulties holding onto a sign due to these difficulties, the objective clinical findings of record continually noted intact strength during numerous evaluations, inconsistent with such allegations, as discussed above.

Furthermore, [Knebel] alleged symptoms of dizzy spells and black outs during the hearing on this matter. While medical findings indicated he reported some dizziness, [he] failed to report blacking out episodes and evaluation findings were

unremarkable, inconsistent with his rather extreme allegations proffered at the hearing (*See* Exhibits 36F; 40F).

In addition, [Knebel] reported daily activities that appeared inconsistent with his allegations of disabling symptoms and limitations. While alleging difficulties throughout the day due to his pain symptoms following cervical fusion and right foot surgery, [he] reported having no difficulties performing personal care tasks independently. He reported not needing any reminders for personal needs or medications (Exhibit 14E, pgs. 2-3). Additionally, [he] reported preparing quick and easy meals on a daily basis, reporting this could take him anywhere from three minutes to one hour. He failed to report any difficulties preparing these meals (*Id.* at 3). He reported trying to do some light cleaning and laundry when able; however, indicated anything more was not easy and reported needing help with mowing, yard work, vacuuming, or lifting (*Id.* at 3-4). Notably, records indicated [Knebel] phoned the clinic in May 2010 reporting left shoulder pain after doing some mowing, which appeared to be an activity inconsistent with his allegations of disabling neck, shoulder, and foot pain (Exhibit 36F, pg. 25). Significantly, this activity appeared inconsistent with [his] function report, where he alleged he was physically unable to do any yard work, stating he could not lift anything over a gallon of milk (Exhibit 14E, pg. 4). [Knebel] reported driving and going out independently without noting any problems (*Id.*).

Socially, [Knebel] reported spending time with others and reported not having any issues getting along with family, friends, neighbors, or others (Exhibit 14E, pgs. 5-6). He further reported getting along "well enough" with authority figures (*Id.* at 7). While alleging a long history of anger issues, it appeared these issues were remote in nature. Records indicated a couple incidents where [he] was somewhat threatening and used profanity during medical evaluations (Exhibits 32F, pg. 68; 36F, pgs. 13, 83); however, this occurred only when he was not getting what he wanted. Generally, treatment records indicated [he] was pleasant

during evaluations. Notably, at the hearing, [Knebel] reported having a friend who worked for the Sheriff's Department, stating they noted how he had turned his life around and was not physically assaultive anymore (Hearing Testimony). Moreover, mental status findings indicated some irritability; however, [he] was noted as exaggerating his stories. His mood and affect were normal, and he had normal behavior (Exhibit 39F). Based on these admission and findings, the undersigned finds [Knebel] would be limited to only occasional interaction with others, as he generally appeared capable of interacting appropriately when in his own best interest to do so.

Additionally, [Knebel] reported he could pay attention "long enough to know what's happening." He reported following written and spoken instructions "well enough." He reported being able to finish what he started. He alleged not handling stress well but indicated he could handle changes in routine well enough (Exhibit 14E, pgs. 6-7). Notably, psychiatric findings indicated intact functioning with normal mental status findings (Exhibits 34F; 39F).

The undersigned has given full benefit to [Knebel's] pain allegations. While physical examination findings appeared rather unremarkable, the undersigned has limited [Knebel] to sedentary work with occasional postural positions and allowing changes in postural positions based on his cervical fusion, foot surgery, and reported pain allegations. Based on the inconsistencies noted above and [Knebel's] reported daily activities, the undersigned finds the claimant capable of performing work activity consistent with the assessed residual functional capacity.

(Administrative Record at 1075-77.)

It is clear from the ALJ's decision that she thoroughly considered and discussed Knebel's treatment history, medical history, functional restrictions, and activities of daily living in making her credibility determination. Thus, having reviewed the entire record, the Court finds that the ALJ adequately considered and addressed the *Polaski* factors in

determining Knebel's subjective allegations of disability were not credible. *See Johnson*, 240 F.3d at 1148; *see also Goff*, 421 F.3d at 791 (an ALJ is not required to explicitly discuss each *Polaski* factor, it is sufficient if the ALJ acknowledges and considers those factors before discounting a claimant's subjective complaints); *Tucker v. Barnhart*, 363 F.3d 781, 783 (8th Cir. 2004) ("The ALJ is not required to discuss each *Polaski* factor as long as the analytical framework is recognized and considered. *Brown v. Chater*, 87 F.3d 963, 966 (8th Cir. 1996)."). Accordingly, because the ALJ seriously considered, but for good reasons explicitly discredited Knebel's subjective complaints, the Court will not disturb the ALJ's credibility determination. *See Johnson*, 240 F.3d at 1148. Even if inconsistent conclusions could be drawn on this issue, the Court upholds the conclusions of the ALJ because they are supported by substantial evidence on the record as a whole. *Guilliams*, 393 F.3d at 801.

### 3.    *RFC Assessment*

Knebel argues the ALJ's RFC assessment is flawed. Specifically, Knebel contends the ALJ's RFC assessment is not supported by substantial evidence in the record. Knebel maintains this matter should be remanded for a new RFC determination based on a fully and fairly developed record.

When an ALJ determines that a claimant is not disabled, he or she concludes that the claimant retains the residual functional capacity to perform a significant number of other jobs in the national economy that are consistent with claimant's impairments and vocational factors such as age, education, and work experience. *Beckley*, 152 F.3d at 1059. The ALJ is responsible for assessing a claimant's RFC, and his or her assessment must be based on all of the relevant evidence. *Guilliams*, 393 F.3d at 803. Relevant evidence for determining a claimant's RFC includes "'medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Lacroix v. Barnhart*, 465 F.3d 881, 887 (8th Cir. 2006) (quoting *Strongson*,

361 F.3d at 1070). While an ALJ must consider all of the relevant evidence when determining a claimant's RFC, "the RFC is ultimately a medical question that must find at least some support in the medical evidence of record." *Casey*, 503 F.3d at 697 (citing *Masterson v. Barnhart*, 363 F.3d 731, 738 (8th Cir. 2004)).

Additionally, an ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

As discussed in section *IV.B.1* of this decision, the ALJ thoroughly addressed and considered Knebel's medical history and treatment for his various health complaints.[5] Similarly, as discussed in great detail in section *IV.B.2* of this decision, the ALJ also properly considered and thoroughly addressed Knebel's subjective allegations of pain and disability in making his overall disability determination, including determining Knebel's RFC.[6] Therefore, having reviewed the entire record, the Court finds that the ALJ properly considered Knebel's medical records, observations of treating physicians, and Knebel's

---

[5] *See* Administrative Record at 1060-70 (providing a thorough discussion of Knebel's overall medical history and treatment).

[6] *See* Administrative Record at 1075-77 (providing a thorough discussion of Knebel's subjective allegations of pain and disability).

own description of his limitations in making the ALJ's RFC assessment for Knebel.[7] *See Lacroix*, 465 F.3d at 887. Furthermore, the Court finds the ALJ's decision is based on a fully and fairly developed record. *See Cox*, 495 F.3d at 618. Because the ALJ considered the medical evidence as a whole, the Court concludes that the ALJ made a proper RFC determination based on a fully and fairly developed record. *See Guilliams*, 393 F.3d at 803; *Cox*, 495 F.3d at 618. The Court concludes Knebel's assertion that the ALJ's RFC assessment is flawed is without merit.

## V. CONCLUSION

The Court finds the ALJ properly considered and weighed the medical opinion evidence in the record. The Court also finds the ALJ properly determined Knebel's credibility with regard to his subjective complaints of disability. Finally, the Court finds the ALJ considered the medical evidence as a whole, and made a proper RFC determination based on a fully and fairly developed record. Accordingly, the Court determines the ALJ's decision is supported by substantial evidence and shall be affirmed.

## VI. ORDER

1.    The final decision of the Commissioner of Social Security is **AFFIRMED**;

2.    Plaintiff's Complaint (docket number 1) is **DISMISSED** with prejudice; and

3.    The Clerk of Court is directed to enter judgment accordingly.

DATED this ___7^{th}___ day of November, 2016.

_____
JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA

---

[7] *Id*. at 1060-77 (providing an exhaustive discussion of the relevant evidence for making a proper RFC determination).